UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| FELIX R. GORNEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Cause No. 1:07-cv-1435- WTL-TAB |
| vs. ) | |
| ) | |
| SIEMENS MEDICAL SOLUTIONS USA, ) | |
| INC., ) | |
| Defendant. | |

## ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This cause is before the Court on the motion for summary judgment filed by Defendant Siemens Medical Solutions USA, Inc. ("Siemens"). The motion is fully briefed, and the Court, being duly advised, **GRANTS** the motion for the reasons set forth below.

### Summary Judgment Standard

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56(c), which provides, in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Once a party has made a properly supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials which "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating that such a

genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996).

In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). The non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001). "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

## Factual Background

The uncontroverted facts of record are as follow.[1] Siemens sells medical imaging equipment to hospitals and other medical service providers. Plaintiff Felix Gorney began

---

[1] These facts, which are taken from Siemens' Statement of Material Facts Not in Dispute, are not disputed by Gorney. Indeed, with the exception of a few undisputed background facts, which are supported by citation to Gorney's deposition, and citation to a September 2, 2005, letter written by his physician, Gorney does not cite to any admissible evidence in his brief, citing instead to the allegations in his complaint, which are not admissible evidence and may not be relied upon in resisting summary judgment. Consequently, the Court must accept as true the facts set out in Siemens' brief, inasmuch as they are supported by appropriate citation to evidence in the record. *See Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921-22 (7th Cir. 1994).

working for Siemens in September 2003 as a Field Service Engineer. As such, he was one of several employees responsible for responding to service calls from customers in the greater Indianapolis area. He was required to work a typical 8:30 a.m. to 5:00 p.m. workday and to be part of an on-call rotation along with the other Indiana Field Service Engineers in order to respond to after-hours and weekend calls. Gorney was also required to travel occasionally to North Carolina for training on the maintenance and repair of various machines Siemens sold. Siemens considered the availability of its Field Service Engineers for after-hours service calls and out-of-state training an essential function of the job. Gorney's last performance appraisal was given in October 2004 and rated him a 2 (partially meets requirements) on a 5 point scale. He continued to have some difficulties with his performance in 2005 and received a written warning on July 1, 2005, regarding problems scheduling repair calls at a local hospital.

In July 2005, Gorney requested a leave of absence. He completed an FMLA request form and submitted a healthcare certification form signed by his doctor, Joseph DeStefano, which stated that as a result of tension and migraine headaches, Gorney was "currently emotionally/physically incapacitated to continue current work schedule" and recommended that Gorney not work for six weeks. Siemens approved Gorney's request for FMLA leave. The company confirmed in writing that Gorney was entitled to up to twelve weeks of leave, during which his current position would be reserved for his return, but after which no position could be guaranteed. Gorney also began drawing short-term disability payments under Siemens' benefit plan.

On September 2, 2005, at or near the conclusion of the six weeks of leave Gorney had requested, Dr. DeStefano wrote another letter on Gorney's behalf which read, in relevant part:

> As projected, Felix R. Gorney . . . is scheduled to return to work Tuesday

> September 6, 2005.
>
> Though Mr. Gorney has made considerable progress toward abatement of work-schedule-induced sleep deprivation with associated anxiety and depression, normalization of his work schedule is urged to prevent symptom relapse.
>
> ...
>
> To insure efficiency on the job and avoid a relapse of symptoms, the following work-hour guidelines are encouraged:
>
> 1. Keep work hours between 8 a.m. and 8 p.m. to include travel time to and from the job site.
> 2. Avoid after-hours on-call for both week-days and weekends.
> 3. Avoid overnight travel.
>
> Mr. Gorney will continue to be treated with psychotropics that have proven both well-tolerated and of benefit to date. The psychotropics should prove of no detriment to his job performance, and indeed, until it is clear his symptoms have remitted for an extended period of time, should contribute to a smooth and effective return to work. Mr. Gorney remains under the care of a neurologist for migraine headaches.

Gorney provided Dr. DeStefano's letter to Elizabeth Goerlitz, a Siemens Human Resources Specialist responsible for receiving leave requests and handling leave-related issues. Goerlitz communicated with Leif Spencer, Gorney's supervisor, regarding Gorney's return to work under the limited work-hour restrictions advised by Dr. DeStefano. Because of the essential nature of a Field Service Engineer's on-call responsibilities and the fact that the limited-hour schedule being sought was not limited to a specific duration, Spencer and Goerlitz concluded that the work-hour restrictions could not be accommodated by Siemens.

Gorney's twelve weeks of qualified FMLA leave expired on October 17, 2005. At that time he was still requesting a limited work-hour schedule and therefore was unable to return to his previous position. On October 24, 2005, Gorney sent an e-mail to Goerlitz which read, in relevant part:

> My doctor says that any restriction on my schedule will only last 6 months. That means that starting the last week of January, I can work an unrestricted schedule. I know that this is still 3 months away, but I thought it best to let you know about it now. If you need a doctor's note indicating this I will ask him to get one and email it to you.
>
> Until then, the restrictions that were in the doctor's note I sent to you earlier still apply

In a letter dated October 31, 2005, Dr. DeStefano noted his understanding that Gorney continued to receive disability payments and stated that Gorney could return to work with certain restrictions. Specifically, he indicated that his recommendation was for Gorney to return to work for a period of six months under the previously requested limited work-hour schedule, after which an alternative work schedule might be worked out.

Though Gorney's qualified leave had expired, Siemens did not immediately terminate his employment. It considered whether Gorney's condition was a disability under the Americans with Disabilities Act and whether Siemens could accommodate the restrictions on his work hours, but determined that availability for after-hours on-call work was an essential requirement of the job. Goerlitz informed Gorney that Siemens could not accommodate the restrictions on his work hours and that he no longer qualified for FMLA leave. She also provided him with the name of the Human Resources Business Partner, Jamie Korenstein, with whom Gorney could stay in contact regarding any opportunities he might have to return to work with Siemens. Korenstein advised all Siemens personnel who were no longer on protected leave to keep checking Siemens' website for open positions and to inform her of any positions for which they applied so that she could follow-up with the appropriate hiring individuals to promote the possibility of the employee's return to work. It was not Korenstein's responsibility to search for work for the employee or to keep in touch with the employee.

5

Gorney spoke with Korenstein in December of 2005, indicating to her that he wanted to return to work for Siemens but was still under work-hour restrictions. Korenstein explained to Gorney that there were no Field Service Engineer positions that could accommodate the work-hour restrictions, but that he should apply for any positions at Siemens that he was qualified to perform given his restrictions. She told him to let her know of any jobs for which he applied; however, she never received any notification from Gorney that he applied for any position.

Sometime in January 2006, Gorney's short-term disability benefits ran out and he immediately applied for long-term disability benefits. In early February 2006, Gorney sent Goerlitz a letter from his psychiatrist, Dr. James Shoot, which indicated his availability to return to work without restriction. Goerlitz brought Gorney's unrestricted status to Korenstein's attention, but Korenstein confirmed that there were no Field Service Engineer positions open in Indiana at the time. Gorney and Korenstein spoke a couple more times during 2006, each time regarding available positions, and each time Korenstein informed Gorney of the lack of any available Field Service Engineer openings. She continued to inform Gorney that he should make her aware of any other position with Siemens that he applied for, but Gorney did not apply for, or even look for, other positions on the company website, as he was of the opinion that it was Korenstein's job to keep him informed of any openings at Siemens.

Gorney received notification in May 2006 that his application for long-term disability benefits was denied. Korenstein also received notice of the denial and, pursuant to normal procedure, she should have reviewed his status for administrative termination at that time. Because he had no pending job applications with Siemens and had not applied for any other positions with Siemens since the conclusion of his authorized leave, he typically would have been administratively terminated. However, Korenstein kept Gorney on inactive status, which

allowed him to receive benefits, accrue vacation and receive holiday pay.

In July 2006, Gorney applied for unemployment benefits from the Indiana Department of Workforce Development, indicating he had been terminated from his employment at Siemens. Siemens uses an outside vendor to handle claims for unemployment benefits, so Korenstein did not become aware that Gorney had filed for and been granted unemployment benefits until sometime in December 2006. When Korenstein found out that Gorney had applied for unemployment and had represented that he had been terminated, she initiated the administrative termination process. By letter dated February 27, 2007, Korenstein notified Gorney that due to his application for and receipt of unemployment benefits, Siemens was accepting his voluntary resignation effective that date.

Gorney responded to the February 27, 2007, letter with one of his own, dated March 2, 2007, in which he stated that he had not voluntarily resigned and that he had seen an advertisement for an open Field Service Engineer position with Siemens which he wished to fill as soon as possible. Korenstein telephoned Gorney after receiving his letter and told Gorney that if he was interested in applying for a Field Service Engineer position, he needed to submit his resume and an application. Korenstein never received a resume or application from Gorney and was never advised by anyone at Siemens that Gorney applied for any position. In fact, Gorney did not apply for any Siemens position after his FMLA leave expired, as he assumed that it was known by Korenstein and others that he wanted to return to work and that they would advocate on his behalf for his return to work.

## Analysis

Gorney asserts three claims in his complaint: failure to reinstate him to his position in violation of the FMLA; wrongful termination in violation of the FMLA; and misrepresentation.

Siemens makes numerous arguments with regard to Gorney's FMLA claims. Because one of them, as discussed below, is dispositive, the Court need not consider the remainder.

To prevail on his claims under the FMLA, Gorney must show that he had an FMLA entitlement and that he was denied that entitlement. *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006); *Hoge v. Honda of America Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004). An employee's right to restoration of his former position or an equivalent following completion of FMLA leave is governed by 29 U.S.C. § 2614(a)(1) and its related regulations, including 29 C.F.R. § 825.214, which provides:

> (a) On return from FMLA leave, an employee is entitled to be returned to the same position the employee held when leave commenced, or to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment. An employee is entitled to such reinstatement even if the employee has been replaced or his or her position has been restructured to accommodate the employee's absence. See also § 825.106(e) for the obligations of joint employers.
>
> (b) If the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition, the employee has no right to restoration to another position under the FMLA. However, the employer's obligations may be governed by the Americans with Disabilities Act (ADA). See § 825.702.

Therefore, the requirement to return an employee to the same or equivalent position "only applies if the employee is able physically to perform the functions and duties of that position." *Hendricks v. Compass Group, USA, Inc.*, 496 F.3d 803, 806 (7th Cir. 2007).

In the case at bar, Dr. DeStefano indicated in his September 2, 2005, letter that upon Gorney's return to work he should be restricted to working only between the hours of 8:00 a.m. and 8:00 p.m.. Because medical equipment may malfunction at any hour, Siemens considers the requirement that its Field Service Engineers be available to rotate in and out of on-call duty after normal hours to be an essential function of the Field Service Engineer position. Therefore,

Siemens argues, it was not required to permit Gorney to return to his former position given his work-hour restrictions, which would not permit him to be on-call.

Gorney's only response to Siemens' argument is that reasonable minds could differ whether Gorney was able to return to work without restriction and perform the essential functions of his job. In support of this position, Gorney points to the fact that in Dr. DeStefano's September 2, 2005, letter he states that the work-hour guidelines he has outlined are "encouraged." Gorney argues that this language could be interpreted as merely a suggestion and not a mandate that Siemens restrict Gorney's work-hours.

While it might indeed be possible to read that particular letter in a vacuum and draw the conclusion urged by Gorney, that conclusion simply is not supported by the evidence of record as a whole. It is clear from a review of all of the correspondence and communication between the parties that everyone involved–including Gorney–considered Dr. DeStefano's work-hour guidelines as necessary restrictions if Gorney were to return to work. Tellingly, there is no evidence that Gorney ever suggested that he was willing to return to work under any other conditions, even after being told that Siemens could not accommodate his restrictions. Indeed, in his October 24, 2005, email to Goerlitz, Gorney expressly stated that he would not be able to return to work without restrictions until January 2006. Based upon the evidence of record, no reasonable jury could question Siemens' determination that Gorney was unable (or at least unwilling) to return to work without the restrictions set forth by Dr. DeStefano and therefore was unable to perform the essential functions of his job. Accordingly, neither the failure to reinstate Gorney nor his termination violated the FMLA, and Siemens is entitled to summary judgment on Gorney's FMLA claims.

Siemens also moves for summary judgment on Gorney's claim for "misrepresentation."[2] Gorney does not respond to Siemens' arguments on that issue at all and, as Siemens points out, it is unclear from the complaint exactly what the nature of the "misrepresentation" claim is. However, as Siemens also points out, regardless of whether Gorney intended to allege some sort of fraud or negligent misrepresentation (or both), there is no evidence in the record that would support such a claim. Accordingly, Siemens also is entitled to summary judgment on that claim.

## *Conclusion*

For the reasons set forth above, Siemens' motion for summary judgment is **GRANTED** in its entirety.

SO ORDERED: 06/02/2009

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification

---

[2]The misrepresentation claim presumably arises under state tort law. This case was originally filed in state court and was removed by Siemens because it concerned a federal question, inasmuch as the FMLA is a federal statute. It appears that the requirements for diversity jurisdiction might also be present in this case. It is unnecessary to decide that question, however, because even in the absence of diversity this Court clearly may exercise supplemental jurisdiction over the misrepresentation claim pursuant to 28 U.S.C. § 1367. While "[w]hen the federal claim in a case drops out before trial, the presumption is that the district judge will relinquish jurisdiction over any supplemental claim to the state courts," *Leister v. Dovetail, Inc.*, 546 F.3d 875, 882 (7th Cir. 2008), there are exceptions to that general rule. One of those exceptions is when it is "absolutely clear" how the state claims should be decided. *Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008). Because that exception applies in this case, it is appropriate for the Court to decide the misrepresentation claim even if its jurisdiction is based upon 28 U.S.C. § 1367 and not diversity of citizenship.